799 P.2d 801

**Ingrid RITCHIE, a single woman, Plaintiff/Appellant,**

v.

**GRAND CANYON SCENIC RIDES, a Utah corporation, Defendant/Appellee.**

**No. CV–89–0135–PR.**

Supreme Court of Arizona, En Banc.

Aug. 30, 1990.

Reconsideration Denied Nov. 14, 1990.

---

Treon, Strick, Lucia & Aguirre by Arthur G. Newman, Jr., JoJene E. Mills, Phoenix, for plaintiff/appellant.

Jennings, Strouss & Salmon by William T. Birmingham and Michael J. O'Connor, Phoenix, for defendant/appellee.

## OPINION

FELDMAN, Vice Chief Justice.

Ingrid Ritchie (Ritchie) petitions us to review a court of appeals decision holding that her amended complaint did not relate back to her original complaint pursuant to Rule 15(c), Ariz.R.Civ.P., 16 A.R.S. (hereafter Rule ——). *See Ritchie v. Grand Canyon Scenic Rides,* No. 1 CA–CV 88–080 (Ariz.Ct.App. Feb. 21, 1989) (memorandum decision). Ritchie claims this decision conflicts with *McKinley v. Bethel,* 147 Ariz. 72, 708 P.2d 753 (Ct.App.1985), which permitted relation back under circumstances similar to this case. We granted review to resolve the conflict in interpretation of Rule 15(c). *See* Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

Grand Canyon Scenic Rides (GCSR) is a Utah corporation that conducted mule rides in the Grand Canyon from 1979 to 1983. The corporation was authorized to do business in Arizona from April 9, 1979 to July 10, 1982, when such authority was revoked. GCSR did not conduct business in Arizona after December 1983.

Ritchie was injured on July 25, 1983 when she participated in a GCSR mule ride. Settlement negotiations began in January 1984 when Ritchie's lawyer contacted GCSR's insurer, Centaur Insurance Company (Centaur). On January 20, 1984, Centaur sent the lawyer a copy of the Release

and Hold Harmless Agreement Ritchie had signed for GCSR *prior* to the accident. Centaur further indicated that, under the agreement, it was obligated to pay only a maximum of $1,000.

On June 27, 1985, Ritchie contacted Centaur once again, stating that if settlement could not be reached she would file suit. Failing or unable to settle with Centaur, Ritchie filed the action on July 25, 1985, the last day of the two-year statute of limitations. She named Fred Harvey Transportation Co. (Harvey), an Arizona corporation, doing business as Grand Canyon Scenic Rides, and several fictitious entities as defendants. On July 26, 1985, service of the complaint was completed on Harvey's statutory agent. GCSR, however, was not affiliated with Harvey and therefore did not receive notice of the action.

On September 19, 1985, Ritchie filed an amended complaint dropping Harvey as a party defendant and correctly naming and adding GCSR as a party. GCSR was served on October 3, 1985, two years and two months after the accident.[1] GCSR eventually moved for summary judgment, claiming the action was barred by the two-year statute of limitations or by the release and hold harmless agreement Ritchie signed before the accident.

The trial court held the statute of limitations barred the action and granted GCSR's motion for summary judgment on that basis. After a series of post-judgment procedures, including appellate proceedings not relevant to the issue before us, Ritchie appealed. Finding Ritchie was not diligent enough to invoke the protection of Rule 10(f) and relying on the "clear" language of Rule 15(c) as recently construed in *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), the court of appeals affirmed. Memo dec. at 16.

Ritchie petitioned for review, focusing only on Rule 15(c). We granted review to determine the circumstances under which an amendment to add a defendant may relate back under the rule.

---

**1.** Service on GCSR would have been timely *if* it had originally been named as a party defendant.

## DISCUSSION

### A. The Rules

#### 1. *Federal Rule 15(c) And Its Interpretation*

The Arizona rules are identical to the Federal Rules of Civil Procedure unless otherwise noted. Rule 1, Revisor's Note. They seek to secure the just, speedy, and inexpensive determination of every action. *See* Rule 1. The drafters of the federal rules sought to avoid the pitfalls created by the cumbersome technicalities of common law or code pleading. F. JAMES AND G. HAZARD, CIVIL PROCEDURE § 3.12 (3rd ed. 1985). The rules accordingly require that pleadings be construed to promote "substantial" justice. *See* Rule 8(g).

Insofar as it is relevant to this case, Rule 15(c) is identical to the federal rule. Whenever feasible our courts have looked to the origin and interpretation of federal counterparts for guidance in construing the Arizona rules. *See, e.g., Edwards v. Young*, 107 Ariz. 283, 284, 486 P.2d 181, 182 (1971); *Hedlund v. Ford Marketing Corp.*, 129 Ariz. 176, 178, 629 P.2d 1012, 1014 (Ct.App. 1981). We thus turn to the evolution of the federal rule.

As originally promulgated, Federal Rule 15(c) consisted of only the first sentence of the present text, as follows:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Under that rule, courts generally permitted only amendments asserting a new theory or claim for relief and not to change parties. 6A C. WRIGHT, A. MILLER, AND M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1498, at 105–06 (1990). A number of courts, however, balked at the harsh result of this literal application of the rule. Accordingly, they

---

*See* Rule 6(f).

interpreted the original Rule 15(c) to permit relation back of amendments changing parties to the action. These courts found support for this interpretation by applying various theories. *See, e.g., Jackson v. Duke,* 259 F.2d 3 (5th Cir.1958) (misnomer); *Meltzer v. Hotel Corp.,* 25 F.R.D. 62 (N.D.Ohio 1959) (on motion for leave to amend complaint, Jan. 26, 1960) (identity of interest); *Zielinski v. Philadelphia Piers, Inc.,* 139 F.Supp. 408 (D.C.Pa.1956) (estoppel).

The 1966 amendment to Rule 15(c) added the second sentence of the present rule to the text. It reads as follows:

> An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

This addition was intended to clarify the rule and resolve the split of authority by stating "more clearly when an amendment of a pleading changing the party against whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a defendant) shall 'relate back' to the date of the original pleading." Rule 15(c), Fed.R.Civ.P., Advisory Committee Note to 1966 Amendment. In Arizona, the amendment was intended to provide "for relation back of pleading amendments in cases in which a complainant makes a mistake in designating against whom his claim is asserted." Arizona Rule 15(c), State Bar Committee Note to 1966 Amendment.

In practice, the amendment created great confusion. Although its avowed purpose was to broaden the rule to aid those who had erred in identifying a defendant or counter-defendant, if read literally it appeared to apply strict standards that would in fact forbid relation back sometimes previously permitted under misnomer or identity of interest theories. Lewis, *The Excessive History of Federal Rule 15(c) and Its Lessons For Civil Rules Revision,* 85 MICH.L.REV. 1507, 1519 (1987). Moreover, courts had difficulty construing the phrase "within the period provided by law for commencing the action." *See* 6A C. WRIGHT § 1498, at 107. While some courts ruled that notice had to be received before the statute of limitations had run, others held that the rule was satisfied as long as the action was filed within the statutory period and notice was accomplished within the time for service of process. *Id.* at 107–13 and cases cited therein. Courts that required notice before the statute of limitations expired also differed as to exactly what type of notice was sufficient. *Id.* at 107. Some required notice of the occurrence, others notice of the actual institution of suit. *Id.* In short, the cases were in "hopeless conflict." F. JAMES AND G. HAZARD § 4.16 (citing Annotation, *Change in Party After Statute of Limitations Has Run,* 8 A.L.R.2d 6).

The United States Supreme Court resolved some of the conflict in *Schiavone.* The plaintiffs alleged they had been libeled in a story in Fortune magazine. They brought their action timely, but sued Fortune when they should have named Time, the parent company. Plaintiffs argued that the period within which the newly added defendant must receive notice under Rule 15(c) included the time allowed by the statute of limitations plus the time available for service of process. A majority of the Court held, however, that notice "within the period provided by law for commencing the action against [defendant]" meant notice within the actual period of limitations. Thus the action was barred. 477 U.S. at 30–31, 106 S.Ct. at 2385. The majority also limited "notice" to knowledge of institution of the action, rather than knowledge of the claim. The Court's majority thus held that the amendment adding a party could relate back under Rule 15(c) only if the defendant had notice that an action had been filed *and* received that notice within the limitations period. *Id.*

*Schiavone* has been sharply criticized on the latter point. *See, e.g.,* Bauer, *Schiavone: An Un–Fortune–ate Illustration of the Supreme Court's Role as Interpreter of the Federal Rules of Civil Procedure,* 63 NOTRE DAME L.REV. 720 (1988); Brussack, *Outrageous Fortune: The Case for Amending Rule 15(c) Again,* 61 S.CAL.L.REV. 671 (1988); Note, *Looking Forward: A Fairer Application of the Relation Back Provisions of Federal Rule of Civil Procedure 15(c),* 63 N.Y.U.L.REV. 131 (1988). The commentators generally believe *Schiavone* undermined Rule 15(c) and the goals of the rules. Nor did its holding further the policy underlying statutes of limitations. Obviously, if the statute of limitations had not run, parties would have no grounds to object to an amendment adding them to actions. *See Williams v. Pennsylvania R.R.,* 91 F.Supp. 652, 655 (D.Del.1950). In fact, if not for the limitations problems, a plaintiff who sued the wrong party could dismiss without prejudice and institute a new action without amending the complaint. *Id.* Thus, the *Schiavone* interpretation makes the relation back provision of Rule 15(c) mostly available only in those cases where the doctrine is of no use.

With this in mind, our inquiry must be directed to determining how Rule 15(c) should be construed so as to comport with substantive limitations doctrine. We turn, therefore, to briefly examine the underlying policies of statutes of limitations.

### 2. *Policy of the Statutes of Limitations*

■ Statutes of limitations afford substantial rights to prospective defendants. *Zuckerman v. Transamerica Ins. Co.,* 133 Ariz. 139, 650 P.2d 441 (1982). The protection they provide is an indication of a public policy that encourages injured parties to pursue redress in an expeditious manner. The legitimate purposes of statutes of limitations are threefold: (1) to protect defendants from stale claims, *see Brooks v. Southern Pacific Co.,* 105 Ariz. 442, 444, 466 P.2d 736, 738 (1970) (pursuit of a claim after an unreasonable amount of time may be thwarted when evidence may have been lost or witnesses' memories have faded); (2) to protect defendants from insecurity— economic, psychological, or both, Comment, *Developments in the Law: Statutes of Limitations,* 63 HARV.L.REV. 1177, 1185 (1950) ("there comes a time when he ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations"); and (3) to protect courts from the burden of stale claims. *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945).

### 3. *Procedural Uniformity*

Having noted the policies served by the rules governing relation back of amendments and those served by statutes of limitations, we turn to the question of uniformity.

If the *Schiavone* rule had come from the court of a sister state, we would accept it only after examining its logic, its effect on the policies embodied in our rules and statutes, and its inherent consistency with Arizona law and practice. However, *Schiavone* is a decision of the United States Supreme Court, interpreting the federal analog of the Arizona rule. In relying on *Schiavone,* the court of appeals stressed the need for Arizona courts to follow federal precedent. Memo dec. at 17–18.

■ We agree that procedural uniformity on a national scale is a generally desirable goal to which state courts aspire. *Harbel Oil Co. v. Steele,* 80 Ariz. 368, 374, 298 P.2d 789, 792 (1956). Nonetheless, blind devotion to federal interpretation is not required; we need not follow the federal cases if we believe Arizona policy, practice, or case law requires a different result. *Id.*

Bearing in mind the substantive policies served by Rule 15(c), together with the need for uniformity, and its exceptions in interpreting the rules, we now examine the rule's substantive requirements for relation back.

### B. The Requirements

#### 1. *What Constitutes Sufficient Notice*

■ Ritchie argues that the amended complaint adding GCSR as a party relates

back to the original filing because, although GCSR did not know about the actual institution of the action before the statute of limitations expired, it had notice of the accident and of Ritchie's claim through its insurer. Furthermore, its insurer had investigated the incident and had negotiated with Ritchie well within the limitation period. Ritchie claims that in *McKinley* the court of appeals correctly interpreted our opinion in *Hughes Air Corp. v. Maricopa County Superior Court,* 114 Ariz. 412, 561 P.2d 736 (1977), to hold that relation back is appropriate if the defendant had informal notice of the underlying claim and would not be prejudiced if the action proceeded. *See McKinley,* 147 Ariz. at 74, 708 P.2d at 755. Thus, she argues, the *Schiavone* interpretation of the type of notice required by the rule is contrary to prior Arizona authority.

In *Hughes,* we declined to permit relation back of an amendment because the defendant "had no notice, formal or informal, of the claim within the time of the running of the statute of limitations." 114 Ariz. at 414, 561 P.2d at 738. We observed that the record was silent as to any negotiations between the plaintiff and the defendant and that the first time the defendant had any indication that a claim existed was after the statute of limitations had expired. *Id.* Under those facts, we held the trial court abused its discretion in failing to grant the defendant's motion to dismiss. *Id.*

In *McKinley,* our court of appeals *construed Hughes* as permitting relation back of amendments made after the running of the statute of limitations when a defendant had notice of the claim against him "whether the notice was by suit *or less formal contact* so that he is in a position to preserve evidence for later presentation to the trier of fact." 147 Ariz. at 74, 708 P.2d at 755 (emphasis added); *see also Canteen Corp. v. Superior Court,* 158 Ariz. 461, 763 P.2d 525 (Ct.App.1988) (no relation back when defendant to be added had no notice of the *occurrence* giving rise to litigation).

The construction of notice inferred from *Hughes* and adopted in *McKinley* would permit amendment in this case and does not appear to violate the goals of the rules of civil procedure. Nonetheless, we believe the approach is problematic for a number of reasons.

First, it violates the clear language of the rule that requires "notice of the institution of the action." Second, the rule arguably gives the prospective defendant no repose. It is unclear when the defendant must be served after he has informal notice of the claim: will informal notice suffice even if he is served after the statute of limitations and the period of abatement expire? No cases give clear guidance. The rule thus fails to adequately protect a defendant from either stale claims or from economic or psychological insecurity. (*See supra* Section A(2) discussing policy of the statutes of limitations.) Lastly, because the term "informal notice" is incapable of precise definition, determining how much notice suffices will burden trial courts and may lead to inconsistent adjudications and inequitable results. Therefore we reject the *Hughes* language as adopted in the *McKinley* majority opinion. Notice of institution means notice that the action has been filed.

### 2. Time for Commencement of the Action

Ritchie urges us to adopt Judge Livermore's concurrence in *McKinley,* thus permitting relation back whenever a defendant receives the requisite notice within the period allowed by the applicable statute of limitations plus the time allowed for service of process. Ritchie's argument is an issue of first impression in Arizona; it has embroiled courts and commentators in a maelstrom of controversy.

In his concurrence in *McKinley,* Judge Livermore observed that an anomaly arises when Rule 15(c) is read to require notice of an action to a misnamed party before the statute of limitations runs. *McKinley,* 147 Ariz. at 74, 708 P.2d at 755. Actual notice within the period of the statute of limitations to a properly named party is *not*

required. *Id.* If a lawsuit is filed on the eve of the expiration of the statute of limitations, a properly named defendant who had no notice at all could not raise the bar of the statute of limitations so long as he had been served with process within a year after timely filing of the action. *Id.; see* Rule 6(f), which allows one year for service of process after filing of the action. The crucial question thus becomes whether the requirement of Rule 15(c) that a defendant receive notice of the action "within the period provided by law for *commencing the action against him*" (emphasis added) is fulfilled if we consider the period to include both the statute of limitations during which the action must be commenced by filing a complaint pursuant to Rule 3 and the additional year Rule 6(f) provides to prosecute the action.

Rule 6(f) was originally enacted as a statute and later adopted as a rule of procedure. In 1913, the legislature enacted 6 R.S. Civil 1913 § 434, which stated:

> When the complaint shall be filed with the clerk, and the other regulations prescribed by law shall be complied with, the clerk shall forthwith indorse on the complaint the day and month and year that it is filed, and at any time within one year thereafter the plaintiff may have a summons issued....

and § 460, which provided:

> An action shall abate if the summons be not issued and served ... within one year from the filing of the complaint.

We first interpreted these statutes in *Gideon v. St. Charles*, 16 Ariz. 435, 439, 146 P. 925, 927 (1915). In *Gideon*, plaintiff filed a complaint shortly before the statute of limitations was to run, but a summons was neither issued nor served until seven months after the statute had run. Defendant claimed the action was barred by the statute, and the trial court agreed. We reversed and held that the legislature intended to toll the statute of limitations for one year when it enacted section 434 of the 1913 Civil Code. *Id.* We observed that the trial court had no discretion to bar the action if service was accomplished during that one year period. *Id.* In sum, the

period in which this state's statute of limitations required that an action must be "commenced and prosecuted" includes the year after the statute of limitations had run. *Id.* Only if the plaintiff failed to prosecute during the year did the action abate. *See* 6 R.S.Civil 1913 § 460; *see also Murphey v. Valenzuela*, 95 Ariz. 30, 33, 386 P.2d 78, 80 (1963) ("fundamental reason for requiring the plaintiff to exercise due diligence in seeking to have the defendant served with process arises out of the fact that when a suit is commenced the statute of limitations is tolled"). Rule 6(f) is directly derived from 6 R.S.Civil 1913 § 460. *See* Rule 6(f), Historical Note.

As we have already observed:

> It is therefore clear that the Legislature did not intend to leave the important time for summoning a defendant to court to judicial improvisation as to when a claim was lost by lapse of time and that a period was intended to be provided during which a summons must be served in order that the action not abate.

*Montano v. Scottsdale Baptist Hosp., Inc.*, 119 Ariz. 448, 451, 581 P.2d 682, 685 (1978).

Given that the legislature intended that an action might be commenced by filing within the period of the statute of limitations (*see* Rule 3) and prosecuted by service within the additional time of one year, allowing an amendment to add or change a party during that same time period does nothing to undermine the protection the legislature intended to provide for defendants. Nor can the added defendant show any legal prejudice; GCSR received notice within the time that would have been proper if it had been correctly named in the first place. *See Ingram v. Kumar*, 585 F.2d 566, 572 (2d Cir.1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979) (permitting relation back under these circumstances).

### 3. *Is Uniformity Required?*

The *Schiavone* majority interpreted Rule 15(c) restrictively when it held that the period for commencement of actions equated with the statute of limitations. Justice Stevens, dissenting, argued that the period

for commencement to which Rule 15(c) referred should be interpreted to include "two components, the time for commencing the action by the filing of a complaint and the time in which the action 'against him' must be implemented by the service of process." *Schiavone,* 477 U.S. at 37, 106 S.Ct. at 2388.

In cases such as this, where the added defendant received all the notice required if it had been originally and properly named as a party defendant, we consider *Schiavone* an unfortunate interpretation of Rule 15(c). A recently proposed amendment to Federal Rule 15(c) confirms our view. *See* Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate Procedure and the Federal Rules of Civil Procedure, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (1989). The proposed amendment permits relation back when a party or the name of the party against whom a claim is asserted is changed within the period provided for service of process.

The purpose of the federal rule revision is to "change the result in *Schiavone v. Fortune,* . . . with respect to the problem of the misnamed defendant." Advisory Committee Note, Preliminary Draft. The Committee noted that the result reached in *Schiavone* based on the text of the previous rule "was inconsistent with the liberal pleading practices secured by Rule 8." *Id.* We do not know if the amendment will be adopted in its drafted form. Nonetheless, we join the drafters of the amendment in concluding that *Schiavone* was decided on an overly literal reading of the rule.

Even if we were to focus on a literal reading of the rule, we reach the same result. First, the words of this rule ("within the period provided by law for commencing the action against him") are not nearly so clear as one might imagine. Several members of the United States Supreme Court and several panels of the circuit courts of appeals have concluded that the proper interpretation of that phrase includes the total time allowed by rule or law for service of summons. *See, e.g., Ingram,* 585 F.2d at 572; *Kirk v. Cronvich,* 629 F.2d 404 (5th Cir.1980). As noted, in Arizona, where the legislature explicitly intended that commencement and prosecution of the action be permitted within the limitations period plus the additional year abatement period, such an interpretation of the words is even more compelling.

Second, for those who nevertheless may find the words crystal clear, we are not constrained in this case as we are in many others by doctrines of original intent, framers' intent, and the like. We are the framers (or at least the enacters) of Rule 15(c) and are somewhat more free, therefore, to interpret its meaning in line with our intent and the intent of the bar committee that proposed it. (*See supra* Section A(1); *see also* Bauer, *supra,* 63 NOTRE DAME L.REV. at 720.) The rule was intended to liberalize the relation back doctrine and allow a plaintiff to correct a misnomer problem or add a defendant that was named incorrectly or omitted. It would be foolish indeed to interpret such a rule so narrowly as to allow its use only in those cases in which it was not needed because the statute of limitations had not yet run. A defendant added by amendment is entitled to no better notice than a defendant originally and properly named.

We conclude that despite the principle of uniformity, we are not compelled to follow *Schiavone.* It conflicts with established Arizona law and also appears to conflict with the avowed goals of the drafters of the federal rules. We hold that when a party files a claim before the expiration of the statute of limitations, an amendment adding or changing a party pursuant to Rule 15(c) will relate back if the defendant or counter-defendant is served within the time prescribed by the applicable statute of limitations plus the time allowed for service of process pursuant to Rule 6(f), and if the claim asserted arose out of the same occurrence set forth in the original pleading. Any reasoning to the contrary in *Hughes Air Corp. v. Maricopa County Superior Court* and *Canteen Corp. v. Superior Court* is disapproved.

## CONCLUSION

Ritchie's claim against GCSR is not barred by the statute of limitations because the claim asserted in her amended pleading arose out of the same occurrence set forth in the original pleading and GCSR was properly named and served with the complaint within the period of the statute of limitations plus the additional time Rule 6(f) provides for the service of process.

The court of appeals decision is vacated. The trial court's judgment of dismissal is reversed, and the case is remanded for adjudication of the complaint on its merits.

GORDON, C.J., and MOELLER, J., concur.

CORCORAN, Justice, specially concurring:

I concur with the result in the majority opinion. I write separately to suggest that this court change the wording of our rule 15(c) to reduce any confusion that may result from our interpreting "commencing the action" in a manner inconsistent with the United States Supreme Court's interpretation of the analogous federal rule, and in a manner contrary to the definition of that phrase in rule 3, Arizona Rules of Civil Procedure. I have recommended in the past that when we interpret a rule contrary to its apparent meaning, we should also amend the wording of the rule to conform to our interpretation. *See State v. Zuniga,* 163 Ariz. 105, 107, 786 P.2d 956, 958 (1990) (Corcoran, J., specially concurring).

The problem with the present wording of our rule 15(c) is the requirement that the misnamed defendant be notified of the filing of the suit "within the period provided by law for *commencing* the action...." Rule 3 provides that "[a] civil action is *commenced* by filing a complaint with the court." Our holding today, however, provides that the phrase "commencing an action" within the meaning of rule 15(c) does not limit amendment to the time period in which a complaint must be filed, but in-

cludes the time period in which a defendant must be served with notice of the complaint. *See* rule 6(f). This results in internal inconsistency within the Arizona rules themselves, and not merely a difference of opinion with the United States Supreme Court.

I would therefore recommend amending rule 15(c) to incorporate a change recently suggested by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, to remove the phrase "within the period provided by law for commencing the action" and substitute the wording "before the expiration of the period provided by rule 6(f) for service of the summons and complaint." [2] *See* Preliminary Draft of Proposed Amendment to the Federal Rules of Appellate Procedure and the Federal Rules of Civil Procedure, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States at 45 (Sept. 1989). The advisory committee note to the similarly worded proposed federal amendment indicates that the revision was formulated to change the result in *Schiavone v. Fortune* with regard to a misnamed defendant, and to provide that a defendant "who is effectively notified of an action within the period allowed ... for service of a summons and complaint, may not under the revised rule defeat the action on account of a defect in the pleading with respect to the defendant's name." Preliminary Draft, at 46.

I believe that revising Arizona's rule 15(c) as I have suggested would clarify the confusion that has resulted over the phrase "commencing the action," and would effectuate the policies behind our abatement provision in rule 6(f).

CAMERON, Justice, specially concurring:

I agree with the result but do not agree that the *Hughes* case needs to be reversed. In *Hughes, supra,* as the majority notes, there was no notice to the defendant, formal or informal, of the claim prior to the

---

**2.** I do not necessarily agree with the entire text of the proposed amendment to rule 15(c) set forth in the Preliminary Draft, which still re-

tains ambiguities present in the current rule that should also be clarified by amendment, but which are not at issue in this case.

running of the statute of limitations. *McKinley, supra,* also cited by the majority, relied on *Hughes* for the position taken in allowing a relation back in *McKinley.* As here, the defendant in *McKinley* had notice and was able to prepare a defense. Defendant was not prejudiced.

I believe *Hughes* is still good law.