677 So.2d 159 (1996)
Bernice Misenheimer and Daniel I. MISENHEIMER
v.
WEST BATON ROUGE PARISH SHERIFF'S OFFICE, Detective Lloyd Talbot and West Baton Rouge Parish Police Jury.
No. 95 CA 2427.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*160 Sumpter B. Davis, III, Baton Rouge, for Plaintiffs-Appellants.
Fred Schroeder, Metairie, for Defendant-Appellee, West Baton Rouge Parish Sheriff's Office.
Thomas M. Nosewicz, New Orleans, for Defendants-Appellees, W.F. Poe Syndicate, Inc. and AIB Syndicate, Inc.
Before FOGG, PARRO and KUHN, JJ.
FOGG, Judge.
By this appeal, plaintiffs contest the dismissal of their wrongful death action. For the following reasons, we affirm.
The facts of this case are not disputed on appeal. Atlas Misenheimer shot and killed his grandson after an argument at his home in 1984. He pled guilty to a charge of manslaughter and was sentenced to a term of one year. On May 22, 1986, he began serving this sentence in the West Baton Rouge Parish Jail in the custody of former Sheriff, Belvin Bergeron.
Mr. Misenheimer was made a trustee in the jail and assigned to unsupervised duties in the motor pool adjacent to the jail, including fueling, washing and maintaining the Sheriff's vehicles. While working in the motor pool on November 22, 1986, Mr. Misenheimer committed suicide by shooting himself in the head with a pistol. The pistol belonged to Deputy Lloyd Talbot, who had locked it in the trunk of his vehicle, which had been left to be serviced. Mr. Misenheimer obtained access to the trunk by activating a remote unlocking device in the vehicle's glove compartment.
This wrongful death action was brought by his surviving spouse, Bernice Misenheimer, and his son, Daniel I. Misenheimer. Named as defendants were West Baton Rouge Parish Sheriff's Office, former Sheriff Belvin Bergeron, Deputy Lloyd Talbot and two excess liability insurers of Sheriff Bergeron, W.F. Poe Syndicate, Inc. and AIB Syndicate, Inc. After trial on the merits, the trial judge rendered judgment in favor of the defendants, dismissing plaintiffs' suit.
Plaintiffs appeal, contending initially that the trial court erred in excluding the testimony of Perry Part who they offered as an expert in the field of prison security. Trial judges have great discretion in determining the qualifications of experts and the effect and weight to be given expert testimony. LSA-C.E. art. 702, comment (d). Absent a clear abuse of the trial court's discretion, appellate courts will not find reversible error. See McCurdy v. Ault, 94-1449 (La. App. 1 Cir. 4/7/95); 654 So.2d 716, writ denied, 95-1712 (La. 10/13/95); 661 So.2d 498; State v. Stringer, 567 So.2d 758 (La.App. 2 Cir.1990).
Mr. Part testified that he had moved through the ranks of the state penitentiary system as a corrections officer over a twenty-year period and, subsequently, gained experience at a halfway house. However, he had no experience in parish jail administration or the management of trustees in small parish jails. Considering the innate differences in these various institutions, we find no abuse of discretion in the trial court's refusal to qualify Mr. Part as an expert in prison security.
The appellants further assert the trial court erred in finding the defendants were not negligent under LSA-C.C. art. 2315. The analysis used to determine whether to impose liability under LSA-C.C. art. 2315 is the duty/risk analysis, which consists of the following four-prong inquiry:
1. Was the conduct in question a substantial factor in bringing about the harm *161 to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?
2. Did the defendant(s) owe a duty to the plaintiff?
3. Was the duty breached?
4. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
See Mart v. Hill, 505 So.2d 1120 (La.1987); Hill v. Lundin & Associates, 260 La. 542, 256 So.2d 620 (1972). Recently, in the case of Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94), 646 So.2d 318, the Supreme Court discussed the duty/risk analysis as follows:
Under a duty/risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. As such, in order for liability to attach under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). (Citations omitted.)
In the case of Scott v. State, 618 So.2d 1053 (La.App. 1 Cir.1993), writ denied, 620 So.2d 881 (La.1993), this court stated that "prison authorities owe a duty to use reasonable care to protect inmates from harm and that this duty extends to protecting inmates from self-inflicted injury. This duty is not absolute, but depends upon the circumstances of the particular case."
In deciding this case, we will first address the issue of whether the defendants conduct was a legal cause or proximate cause of Mr. Misenheimer's death; that is, whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner.
There is no "rule" for determining the scope of the duty owed. It is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Roberts v. Benoit, 605 So.2d 1032 (La.1991). In determining the limitation to be placed on liability for a defendant's substandard conduct, the proper inquiry is how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone. Absent an ease of association between the duty breached and the damages sustained, there is no legal fault. Roberts, 605 So.2d at 1044-45.
In the instant case, the trial court made the factual determination that the sheriff and his employees were unaware of Mr. Misenheimer's suicidal tendencies prior to his death. This conclusion is supported by the record and undisputed on appeal. The appellants contend that, nevertheless, there is an ease of association between Mr. Misenheimer's act of suicide and the availability of the gun, because during his incarceration he was treated for depression, by both the Parish Coroner and by his private psychiatrist and he was prescribed various medications by those doctors to treat depression.
It can be readily accepted that firearms should be kept out of the hands of inmates, but the question is whether the jail authority is negligent when an inmate manages to obtain a weapon under the particular circumstances of this case and uses it to commit suicide. Should an inmate obtain a firearm it is foreseeable that he could use it to facilitate an escape and/or to cause harm to prison guards, other inmates or the general public. However, Mr. Misenheimer did none of these things; rather, he committed a deliberate and purposeful act of suicide. Additionally, the medical evidence shows that, although Mr. Misenheimer was suffering from depression, the physicians who treated him during his incarceration did not consider him to be suicidal. Given the fact that no one at the jail was or should have been aware of his suicidal intentions and that Mr. Misenheimer's act was one of deliberately inflicting harm upon himself, this act was neither foreseeable *162 nor easily associated with any duty that was allegedly breached. Therefore, it was not encompassed in the duty owed to Mr. Misenheimer by the defendants.
A negative answer to any of the inquiries of the duty/risk analysis results in a determination of no liability. Therefore, as we have determined the trial court did not err in finding the risk of suicide was not encompassed by the duty owed by the defendants, there can be no finding of liability in this case and we need not consider the remaining questions in the duty/risk analysis.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants.
AFFIRMED.